## Wilbert Bernier, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 6,729.

1. APPEAL AND ERROR, § 1321*—*what presumed as to finding of jury returning verdict for plaintiff in action for death.* An instruction, in an action to recover for the death of one struck by a locomotive on defendant's track, given at defendant's request, that at the time of the injury deceased was on defendant's property "and was nothing more than a licensee thereon. That is to say, she was on said tracks at her peril, and the only duty defendant owed to deceased was that upon discovering she was in danger the law would require defendant to use every reasonable effort to keep from injuring deceased" is equivalent to instructing that plaintiff could recover only for the wilful and wanton injury charged in his declaration, and, on appeal, it must be presumed that, by its verdict for plaintiff, the jury found defendant guilty of the wanton and wilful injury charged.

2. NEGLIGENCE, § 7*—*what constitutes constructive or legal wilfulness.* To establish wanton and wilful injury, it is not always necessary to prove ill-will towards the person injured, but an entire absence of care for the life, person or property of others, if such as to exhibit indifference to consequences, makes a case of constructive or legal wilfulness such as charges a person, whose duty it was to exercise care, with the consequences of a legal injury.

3. NEGLIGENCE, § 192*—*whether evidence establishes wilful and wanton negligence as for jury.* The question whether the evidence establishes wilful and wanton negligence is for the jury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. RAILROADS, § 583*—*when evidence in action for death of person killed while near track, sufficient to support finding of wanton and wilful negligence on part of engineer.* In an action to recover for the death of one struck by an engine while standing on a platform near defendant's railroad track, evidence as to the speed of the train, the situation of deceased and the engineer's knowledge thereof and his failure to give warning, *held* sufficient to support a finding that the engineer was guilty of wanton and wilful negligence.

5. EVIDENCE, § 472*—*when criminal charge need not be proved beyond reasonable doubt.* In a civil proceeding, a criminal charge against one who is a stranger to the proceeding need not be proved beyond a reasonable doubt.

6. RAILROADS, § 497*—*when fact that person, killed while near track, had been trespassing is immaterial.* In an action to recover for the death of one struck by defendant's engine as she was standing on a platform near the track, it is immaterial that before the accident occurred she had been trespassing on defendant's track.

7. RAILROADS, § 557*—*duty of person on platform near track to keep watch for approaching trains.* Due care does not require that one standing on a platform near a railroad track keep watch in one direction for approaching trains all of the time.

8. RAILROADS, § 584*—*when evidence sufficient to support finding that one killed while near track was not guilty of contributory negligence in failing to see engine.* In an action to recover for the death of one struck by an engine as she was standing on a platform near the track, where it appeared that the track on which the engine approached was curved and that sight of it might have been intercepted by a freight train which was going in the opposite direction on another and which was making a great deal of noise, such evidence is sufficient to support a finding that deceased was not guilty of contributory negligence in failing to see the engine.

Appeal from the Circuit Court of Kankakee county; the Hon. AR-THUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed December 17, 1919.

W. R. HUNTER, for appellant.

E. A. MARCOTTE and J. BERT MILLER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This case was before us in *Bernier v. Illinois Cent.*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

456    APPELLATE COURTS OF ILLINOIS.

Bernier v. Illinois Central Railroad Co., 215 Ill. App. 454.

R. Co., 213 Ill. App. 530, where we reversed a judgment for plaintiff and remanded the cause for another trial. A second trial has resulted in another judgment for plaintiff, from which defendant appeals. In our former opinion we described the *locus in quo* and the circumstances attending the killing of Bernice Bernier by the engine or train of defendant. It is not claimed that our description of the surroundings and circumstances in our former opinion was incorrect or that the evidence at the second trial was materially different in those respects from that at the first trial. We therefore adopt our description of the place and circumstances in our former opinion and refer to it here without repeating it.

The first count of the declaration charged that the defendant wilfully and wantonly ran said passenger train against said Bernice Bernier and she was thereby injured and died from said injury. The only plea was not guilty. The court at the instance of the defendant gave to the jury instruction No. 17, as follows: ''You are instructed by the court that at the time deceased was struck by the locomotive she was upon the property of the defendant and was nothing more than a licensee thereon. That is to say, she was on said tracks at her peril, and the only duty defendant owed to deceased was that upon discovering she was in danger the law would require defendant to use every reasonable effort to keep from injuring the deceased.'' This was equivalent to telling the jury that plaintiff could recover only for the wilful and wanton injury charged in the first count. Under this instruction we must presume that the jury found defendant guilty of a wilful and wanton injury under the first count. The cases of *Heidenreich v. Bremner*, 260 Ill. 439; *Neice v. Chicago & A. R. Co.*, 254 Ill. 595; *Illinois Cent. R. Co. v. Leiner*, 202 Ill. 624; *Chicago Terminal Transfer R. Co. v. Kotoski*, 199 Ill. 383, and other cases cited in those opinions, are authority

for the proposition that to' establish the charge of wilful and wanton negligence it is not always necessary to prove ill-will towards the party injured, but that "an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness, such as charges the person whose duty it was to exercise care, with the consequences of a wilful injury." Thompson on Negligence, vol. 1, sec. 22, says: "An entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness, such as charges the person whose duty it was to exercise care, with the consequences of a wilful injury." The foregoing Illinois cases also show that the question whether wilful and wanton negligence is established is a question of fact for the jury.

A careful reading of the evidence of Holly, the engineer who drove the passenger train, read at length in the record, when considered in connection with the other undisputed facts, makes a case of wilful and wanton negligence within the meaning of the foregoing authorities. He estimated the speed of his train when he passed under the viaduct at 15 miles per hour and when he struck Bernice and her mother at 10 miles per hour. A reading of his entire evidence in the record discloses that he was paying no attention to the speed at which he was then running and that this was but an estimate formed afterwards. Naturally he would have a tendency to testify to that which would as far as possible relieve him of responsibility for this death. He conceded that he was running 45 miles per hour in the upper part of the city and admitted that he might have been running faster than that. He admitted that he was running 25 miles per hour not very far north of the viaduct. His estimate, where it could be verified, was incorrect. He

testified that when he first saw the Berniers he was about 100 feet south of the viaduct and 125 feet from the cinder pathway, which would make the pathway 225 feet south of the viaduct, whereas it was proven by actual measurements to be 423 feet. Another witness, who saw the engine come under the viaduct, estimated its speed at 25 or 30 miles per hour, or more, but he showed no special training that would give weight to his estimate. Proof introduced by defendant showed that when Mrs. Bernier was picked up after the accident she lay about 30 feet south of the cinder path and that Bernice was 20 feet, according to one witness, and 25 feet or 30 feet, according to another, south of Mrs. Bernier, or some 50 or 60 feet south of the cinder path, where other evidence tended to show that these women were standing when they were struck by the bumper or cylinder head of the engine. The jurors would be permitted to judge by their own observation and knowledge of the affairs of life whether a vehicle, whether engine or automobile, going at the speed of 10 miles per hour and striking a woman, would be apt to throw her 50 or 60 feet. All this evidence considered, we are of opinion that the jury were warranted in finding that the train was traveling at a much greater speed than 15 miles per hour when it passed under the viaduct and much greater than 10 miles per hour when it struck Bernice Bernier. Actual measurement showed that the distance from the viaduct to the south water tank, where the engine stopped, was 613 feet. The engineer testified that he knew that people often crossed these yards on that cinder path; that he saw Bernice and her mother when they were crossing the second switch track west of the track on which his train was running; that he watched them until after they had crossed his track; that he did not apply brakes or any other means at his command to check the speed of his train during that time; that he took it for granted that they had time

enough to get across his track before he reached them and assumed that they knew what they were about. During that time he did not sound the whistle, and seeing that they had crossed his east rail, he turned away from looking at them. He knew a freight train was passing on the northbound track between the women and the station and that they could not cross to the station. The proof is that the distance between two trains on that platform was 6 feet 5 inches. He must have known that the space was very narrow. He also noticed that the women did not look his way at all. He must have realized that they probably were not conscious of the approach of his train and that they would naturally be careful not to approach too near the moving freight cars just ahead of them. We are of opinion that, under the circumstances as he knew them to be, he was regardless of the consequences to the life and safety of those persons when he could either have wholly stopped or greatly checked the speed of his train after he saw those women, if he had seen fit to do so. We therefore conclude that the jury were warranted in finding against the defendant under the first count. Under that count it was immaterial whether Bernice Bernier or her mother were in the exercise of due care, and any imperfections in instructions on other subjects would not defeat a recovery under the first count. Defendant urges that an instruction which permitted the first count to be established by a preponderance of the evidence is incorrect because crime alleged in civil proceedings must be proved beyond a reasonable doubt. Even if a crime is charged in the first count, which we do not concede, that point is not well taken, because, in a civil suit, a criminal charge against a stranger to the suit need not be proved beyond a reasonable doubt. *Foster v. Graf,* 287 Ill. 559.

The evidence above discussed also warranted a verdict of guilty against defendant under counts charging

ordinary negligence, but as to them it was necessary that the proof should show due care on the part of Bernice Bernier, and also on the part of her mother, if Bernice is to be treated as a child of tender years. Defendant contends that the proof is undisputed that they were not exercising due care and also that they were trespassers while on the cinder walk. We are disposed to hold that they were licensees on that cinder walk, but regard that as immaterial, because they were not struck while on the cinder walk, but they had reached and were standing upon the station platform when they were struck. Mrs. Bernier testified she looked up the track and did not see an approaching train. It is said this testimony is necessarily untrue, for, if she had looked, she must have seen it. There was a curve some distance above the viaduct and a freight train going north on the east track. Before the passenger train came around that curve its headlight would be thrown across the freight yards to the west of where the women were, and until the passenger train came around that curve the freight train might have concealed the view of the passenger train from the women. Due care did not require that they look in one direction all the time. As they went upon the platform just east of the southbound track, the attention of the women would naturally be drawn to the passing freight train. Mrs. Bernier testified that those cars were making a very distressing noise, and a passenger on the passenger train, who was required to wait until the freight train got by before getting off after the train had stopped, testified that the freight train was making an unusual noise, clanging, scraping, and shrieking, so that one could hardly hear anything except the noise of the freight train. All this was to be taken into consideration in determining whether these women were exercising ordinary care for their own safety. We are not prepared to say from the evidence that the jury should have found

that they were lacking in ordinary care, under all the circumstances surrounding them at that moment.

We think it unnecessary to a determination of the case to decide the much-argued question what the rights of foot passengers were when upon the cinder walk, and we find no substantial error in instructions relating to the material questions in the case.

The judgment is therefore affirmed.

*Affirmed.*